139 So. 643

PRUDENTIAL INS. CO. OF AMERICA v. McBRIDE.

No. 30989.

Jan. 4, 1932.

Rehearing Denied Feb. 1, 1932.

Terriberry, Young, Rault & Carroll, of New Orleans, for appellant Prudential Ins. Co. of America.

Ellender & Ellender, of Houma, for appellees People's Bank & Trust Co. and Chas. J. Boudreaux.

OVERTON, J.

On April 5, 1927, plaintiff began the foreclosure of a mortgage, granted by defendant

2

to secure a loan of some $35,000. Two third oppositions were filed in the suit, during the last days of May, 1927, claiming preferences over plaintiff's mortgage, on the proceeds of the sale—one by the People's Bank and Trust Company, in liquidation, and the other by the minor, Charles J. Boudreaux, Jr., through his legal representative. Both oppositions are directed against the distribution of the proceeds of the sale of the property, which comprises Belle Grove Plantation, against which the foreclosure is directed, and which, since the granting of the mortgage has passed, notwithstanding the pact against alienation, into the hands of the Belle Grove Plantation, Inc.

The preference asserted by opponents arises from two subrogations, executed by the state tax collector, in favor of the People's Bank & Trust Company against the property mortgaged, for taxes, which it is urged were paid by the bank, which was a junior mortgage creditor. One of the subrogations was for the taxes of 1925, which, in principal and interest, amounted to $2,273.66. This subrogation is asserted by the People's Bank & Trust Company, as entitling it to a preference over plaintiff for the amount thereof. The other subrogation was for the taxes of 1924, amounting, in principal and interest, to $2,402.57. This subrogation was assigned by the People's Bank & Trust Company to the minor, Charles J. Boudreaux, Jr., whose tutor the bank was, as an investment, inferentially, of the minor's funds. This subrogation is asserted by the minor, through his legal representative, for the amount thereof, as entitling him to preference over plaintiff.

The defenses, presented by plaintiff in this court, to the two oppositions, are that the taxes for the years 1924 and 1925 were paid by the People's Bank & Trust Company with funds belonging to Belle Grove Plantation, as shown by two promissory notes of the plantation, executed in favor of the bank, one equal to the amount of taxes for the year 1925, and the other equal to the amount of taxes for the year 1924, and that, if these notes were not given to provide funds with which to pay the taxes, they were given in discharge of the subrogations, and operate as a novation of the indebtedness, asserted by opponents.

The record, in any event, is vague concerning these transactions, and it is specially so, when it is recalled that one of the parties to them is a bank. The record leaves much to inference. However, the vagueness of the record is accounted for by efforts made to juggle the books of the bank, so as to conceal embezzlements of one or two of its officers. The bank has not even anything approaching a complete record of its administration of young Boudreaux' estate, though Boudreaux was its ward.

So far as is disclosed, it does not appear that any one ever saw the notes forming the basis of the defense. No witness who took the stand ever did. The absence of the notes from the files of the bank is not accounted for by their payment, if they were ever issued. There is nothing to suggest that they were ever negotiated. The only evidence that they ever existed are entries, reading as follows: "No. 6: Credit other loans and discounts $2,273.66, note No. 8955–B, Belle Grove Plantation, Inc., February 13, 1925. No. 7: Credit other loans and discounts $2,402.57, note No. 10,000–B, Belle Grove Plantation, Inc., May 21, 1926."

The position of opponents is that these entries have reference only to the tax subrogations, which the bank classified as notes, and that notes were never given by the plantation in connection with these taxes or subrogations.

The evidence before us would seem to uphold opponents' position. Louis J. Derbes, a certified public accountant, and a witness for plaintiff, who had no personal knowledge of these transactions, said that he could not tell with certainty, at the time of the trial, speaking with reference to the credit slips, shown above, whether the reference to notes was to the tax subrogations or was to notes actually given, although the record indicated that notes were given. J. Arthur Daspit, the cashier of the bank, testified that all tax subrogations were carried as notes.

The only circumstances, which we recall, entitled to serious consideration, tending to show a contrary state of facts, is that one of the subrogations, the one asserted by the bank, is dated ten days after the date, given on the credit slip, of the note therein mentioned, thus suggesting that a note was given ten days before the act of subrogation came into existence, and that the subrogations bear no numbers, whereas numbers are given in the credit slips of the notes therein mentioned. In view, however, of the manner in which the records of the bank were kept, and the fact that the officer, who made these credit slips, was later convicted of embezzling the funds of the bank, we do not attach much weight to this evidence.

It does not seem reasonable to us, although some assistant bank examiner might, in suggesting generally that notes be taken instead of subrogations, where taxes are to be paid for others, that a bank, if it were to its interest to pay the taxes at all, would lend comparatively large amounts to a planting company, in a bad financial condition, on the unsecured notes of the company, instead of paying the taxes, with subrogation to the lien and privilege of the taxing authority, such lien and privilege being a first lien and privilege.

Finding that no notes were given at any time, the finding disposes of the plea of novation, here urged, which rests upon the giving of notes in discharge of the subrogations.

The trial judge rendered judgment for the opponents, recognizing their right to be paid by preference over plaintiff to the full extent of their claims, in a well-considered opinion. This opinion we have found of assistance to us.

The judgment is affirmed.